IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GTY Technology Holdings Inc. d/b/a Euna Solutions ) | |
| CityBase, Inc., ) | |
|           Plaintiffs, ) | |
|           v. ) | Case No. 1:24-cv-09069 |
| Wonderware, Inc. d/b/a CORE Business Technologies ) | |
| Michael Duffy, and Christopher Lewis ) | Honorable Jeremy C. Daniel |
|           Defendants. ) | |

**DEFENDANTS' RULE 56.1 STATEMENT IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON TRADE SECRET AND CONTRACT CLAIMS**

Defendants Wonderware, Inc. d/b/a CORE Business Technologies ("CORE") and Michael Duffy, by their counsel Lynch Thompson LLP, and Christopher Lewis, by his counsel Carpenter Lipps, LLP, respectfully submit the following Rule 56.1 Statement in Support Of Their Motion For Summary Judgment on Trade Secrets and Contract Claims.

1.    On May 24, 2024 Plaintiffs filed a complaint in the Circuit Court of Cook County, Illinois, which was amended on June 18, 2024. ("Cook County Action") The First Amended Complaint, is attached as Exhibit 1, on June 18, 2024..

2.    By order dated July 10, 2024, the presiding judge (Hon. Cecilia Horan) entered an order agreed upon by the parties that barred Defendants from any ongoing use of the Excel (Compl. Dkt 001, ¶ 65) or the Deck (Compl. Dkt 001, ¶ 64).  *See* Ex. 2.

3.    On July 12, 2024, CORE served its Trade Secret Interrogatories to Plaintiffs in the Cook County Action. *See* Group Ex. 3.

4.    On July 19, 2024, Plaintiffs served joint sworn responses to CORE's Trade Secret Interrogatories. *See* Ex. 4.

5. On July 24, 2024, in the Cook County Action, Defendants CORE and Duffy filed an emergency motion to re-set the schedule on Plaintiffs' preliminary injunction motion and to compel Defendants to answer the trade secret interrogatories. *See* Ex. 5.

6. On July 26, 2024, the court presiding over the Cook County Action held a hearing on the motion described in Statement of Fact No. 5. A copy of the transcript of that hearing is attached hereto as Ex. 6. At the hearing, the judge in the Cook County Action made the following statement:

- ```
  it does seem like, plaintiff, you're going to have to answer what
  [trade secret] you know was taken, right? (p. 22, l. 16-18)
  ```

7. On July 29, 2024, the judge in the Cook County Action ordered, among other things, Plaintiffs to supplement Defendants' initial interrogatories by August 2, 2024. *See* Ex. 7.

8. On July 31, 2024, the judge in the Cook County Action set Plaintiffs' motions for preliminary injunction for an evidentiary hearing on October 31 and November 1, 2024. *See* Ex. 8.

9. On August 2, 2024, in the Cook County Action, Plaintiffs served sworn supplemental responses to CORE's trade secret interrogatories. *See* Ex. 9.

10. On August 7, 2024, in the Cook County Action, Plaintiffs served sworn Additionally Supplemented Responses to Defendant Core's Trade Secret Interrogatories. *See* Ex. 10. The version attached as Exhibit 10 does not contain an executed verification page, but is otherwise identical to the executed version served on Defendants. Notwithstanding marking every page of their interrogatory responses as "Confidential" when served on Defendants, Plaintiffs attached the purportedly confidential responses to a public filing in the Cook County Action on August 13, 2024.

11. In response to Interrogatory No. 2, Plaintiffs stated:

**ANSWER:** Plaintiffs object to this Interrogatory to the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Plaintiffs further object to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Plaintiffs to identify all "trade secrets." Subject to and without waiving the foregoing Objections, Plaintiffs respond that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Euna's and CityBase's nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Plaintiffs further respond that Duffy had intimate access to Euna's most sensitive documents and information, relating to Euna's Software, data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings. Duffy also has intimate knowledge of Euna's confidential and competitively sensitive financial information. For instance, Duffy has already improperly shared his knowledge of Euna's internal confidential valuation figures, and underlying financial performance, for publication in court filings.

Plaintiffs state further, by way of supplementation and further specificity, that Duffy in particular, as CEO and founder, had access to the entirety of the CityBase business and thus its confidential records, strategies, and technical information. For instance, Duffy participated in Executive Leadership Meetings multiple times each week when CityBase's core business and strategy decisions were made. Duffy is accordingly aware of CityBase's sales and marketing strategies, goals, and how CityBase makes these decisions. Duffy is aware of what products CityBase is investing in and those it is not, and he is aware of CityBase's pipeline of products and product features that are forthcoming or under consideration. Duffy and Lewis also have intimate knowledge of CityBase's customers, and each customer's profile as it was developed by CityBase, including client preferences and, in particular, particularized challenges and vulnerabilities with each customer, the disclosure of which to a competitor would be extremely damaging. These include, but are not limited to, important customer profiles and information belonging to CityBase for Chicago, Illinois; New York, New York; San Francisco, California; and Denver, Colorado. And Duffy and Lewis also have intimate knowledge of CityBase's pricing and bidding strategies. Duffy and Lewis also have intimate knowledge of CityBase's confidential and competitively sensitive financial information. Duffy and Lewis also have particularized confidential information about CityBase's financial performance, sales performance, R&D spend and investment, marketing spend, and employee compensation—all of which is confidential would be damaging if known to a competitor. Duffy also has confidential detailed information about CityBase's Software, technical capabilities, methods, and systems, most notably about the inner workings and technological details behind CityBase's novel offering for its cashiering and point of sale systems (as well as its kiosk systems), which involves a unique cellular modem network with technology in place to maintain PCI compliance.

The foregoing is information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an

imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of CityBase's competitive, product, and technical strategy and is therefore vital to CityBase's ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to CityBase's ability to generate all of its revenues— and considerable effort was expended in developing such information. The confidential nature of the foregoing is particularly valuable and vital in this context, where in the hands of a competitor like CORE—which actively competes for and, in some instances, shares certain customers with CityBase and has a clear incentive to seek to expand those relationships—such information would be used to wholly undermine CityBase's relationships and all competitive advantages that it has invested years to develop.

To the extent Interrogatory 2 requests the identity of specific documents extracted by Duffy or Lewis, Plaintiffs state further, by way of supplementation, that their investigation continues. However, that investigation has been impeded by Duffy's destruction of evidence. Based on forensic information recently obtained by Plaintiffs, before returning his CityBase-issued laptop on or about March 20, 2024, Duffy utilized a functionality on that computer to perform a forensically robust deletion of all data on his CityBase hard disk. Unlike processes that leave some residual information, the method Duffy used destroyed all data on the laptop. Duffy undertook this evidence destruction without authorization from or consultation with CityBase. He then returned it on or about March 20, 2024, by which time Duffy was already working for CORE. Duffy's activities while at CityBase were also concealed by the fact that, as CEO, he did not have his CityBase accounts managed (and thus reviewable by an *ex post* forensic review) like other employees were. Plaintiffs therefore require fulsome discovery from every source and medium where Duffy may have discoverable data that he has not yet destroyed, including without limitation all personal electronic devices, backups, cloud storage, and other manner of data storage, including but not limited to computers, cell phones, hard drives, and digital databases to which Duffy has had access. Such sources must also include Duffy's communications with current and former employees of CityBase, to understand the full scope of actual materials taken or retained by Duffy. Plaintiffs, however, also reserve the right to seek any and all spoliation sanctions in connection with Duffy's destruction of evidence. Despite this spoliation, what Plaintiffs currently know, is that Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. In addition, in the course of this litigation, Duffy has filed non-public information about Euna's internal valuations on the public docket. Defendants were further shown to have accessed CityBase's systems in the months before they resigned. Plaintiffs' forensic

review to date has uncovered Duffy's use of DropBox and other applications to access CityBase's systems after the termination of his employment with CityBase. What Duffy accessed remains obscured without discovery, including because Duffy destroyed all evidence of his activities on the one laptop on which he claims he conducted CityBase work. Defendants are also known to have used their personal devices to work on and store CityBase's confidential documents and information. And Duffy in particular founded CityBase and has served as its CEO, overseeing its entire business for nine years (in addition to nearly five years as an Executive Vice President at Euna), establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Evidence also indicates that others working for Duffy may also have misappropriated confidential and trade secret CityBase or Euna information. For instance, CityBase's senior implementation engineer, James Gates, is known to have downloaded CityBase's engineering planning documents in the days prior to his departure from CityBase to work with Duffy. What is more, Gates's CityBase laptop was also conspicuously wiped before it was turned in to CityBase. Plaintiffs reserve all rights with respect to this and other evidence destruction.

In addition to the general additionally supplemented point raised at the outset of these Responses regarding Euna's joint ownership of all CityBase assets, including CityBase's trade secrets, Plaintiffs state that other than Euna's financial information, internal valuation, specific customer lists, and prospective customers and leads lists described above, which emanate from Euna's business, the trade secrets and confidential information identified above predominantly emanated from the CityBase subsidiary business.

Plaintiffs reserve the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Plaintiffs' attention at a later time.

Ex. 10 at pp. 5-10 I'rogg No. 2 response.

12. On August 8, 2024, in the Cook County Action, Defendants CORE and Duffy filed an Emergency Motion to Strike Trade Secret Issues from the Upcoming Preliminary Injunction Hearing Based on Plaintiff's Failure to Honor the Court's July 26 [sic] Order.[1] *See* Ex. 11.

13. On August 13, 2024, Lewis joined in Defendants CORE and Duffy's Emergency Motion to Strike Trade Secret Issues from the Upcoming Preliminary Injunction Hearing Based on Plaintiff's Failure to Honor the Court's July 26 [sic] Order. *See* Ex. 12.

---

[1] The order was the product of the July 26-hearing, but was not entered until July 29, 2024.

5

14. On August 16, 2024, an order was entered in the Cook County Action providing that "Plaintiffs' Motion for Preliminary Injunction is taken off the calendar." *See* Ex. 13.

15. On September 23, 2024, Plaintiffs obtained a voluntary dismissal of the Cook County Action, but Defendants' motion for sanctions against Defendants in the Cook County Action remains pending. *See* Ex. 14.

Dated: November 27, 2024
Respectfully submitted,

*/s/ Daniel Lynch*
Daniel Lynch (6202499)
Amy J. Kanarowski (6292957)
Lynch Thompson LLP
150 S. Wacker Dr., Ste 2550
Chicago, Illinois 60606
(312) 346-1600
dlynch@lynchthompson.com
docketing@lynchthompson.com
*Attorneys for Wonderware, Inc. d/b/a CORE Business Technologies and Michael Duffy*

*/s/ Jonathan M. Cyrluk*
Jonathan M. Cyrluk (6210250)
Steven C. Moeller (6290263)
Carpenter Lipps LLP
180 North LaSalle Street, Suite 2105
Chicago, Illinois 60601
(312) 777-4300
cyrluk@carpenterlipps.com
moeller@carpenterlipps.com
*Attorneys for Christopher Lewis*

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that, on November 27, 2024, I caused a copy of the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Daniel Lynch*

                                            Daniel Lynch (6202499)
                                            Lynch Thompson LLP
                                            150 S. Wacker Dr., Ste 2550
                                            Chicago, Illinois 60606
                                            (312) 346-1600
                                            dlynch@lynchthompson.com
                                            docketing@lynchthompson.com