Exhibit 4

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| GTY TECHNOLOGY HOLDINGS, INC., d/b/a | ) | |
| EUNA SOLUTIONS and CITYBASE, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2024 CH 04952 |
| WONDERWARE, INC. (d/b/a CORE BUSINESS | ) | |
| TECHNOLOGIES), MICHAEL DUFFY, and | ) | Calendar 9 |
| CHRISTOPHER LEWIS, | ) | |
| Defendants. | ) | Hon. Cecilia Horan |

<u>PLAINTIFF'S RESPONSES TO DEFENDANT CORE'S TRADE SECRET</u>
<u>INTERROGATORIES</u>

Plaintiff CityBase, Inc. ("<u>CityBase</u>" and, together with GTY Technology Holdings Inc.,

d/b/a Euna Solutions ("<u>Euna</u>"), "<u>Plaintiffs</u>"), by and through its undersigned attorneys, submit

these Responses to Defendant Wonderware, Inc., d/b/a CORE Business Technologies' ("<u>CORE</u>")

First Set of Interrogatories.

      1.     Other than the Excel and the Deck, identify with particularity and in detail all
"formulas, patterns, devices and compilations of information that are used in [plaintiffs']
business and provide Plaintiffs with actual and potential economic value as a result of not being
generally known to other persons" as alleged in Plaintiffs' First Amended Complaint ¶91.

    **ANSWER:** CityBase objects to this Interrogatory insofar as it purports to request the

identity of *all* "formulas, patterns, devices and compilations of information that are used in

[plaintiffs'] business," which is overbroad and beyond the scope of proper discovery under

Illinois Supreme Court Rule 201(c). CityBase will construe this Interrogatory to be limited to

those "formulas, patterns, devices and compilations of information that are used in [plaintiffs']

business" that Defendants have, may have, or threaten to misappropriate from Plaintiffs.

CityBase further objects to the extent that it calls for a description of documents or information

within Defendants' possession, custody, or control.

    Subject to and without waiving the foregoing Objections, CityBase responds that, in

addition to the "formulas, patterns, devices and compilations that are used in [Plaintiffs']

business and provide Plaintiffs with actual and potential economic value as a result of not being generally known to other persons" contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, key contract terms, and CityBase further responds that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, , and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of

great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

2. Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "CORE, Duffy, and Lewis are in possession of…through Duffy's and Lewis's improper and unlawful extraction thereof from Plaintiffs' systems" as alleged in Plaintiffs' First Amended Complaint ¶103.

**ANSWER:** CityBase objects to this Interrogatory to the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential

documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. CityBase further responds that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus

directly contributing to Plaintiffs' ability to generate all of its revenues— and considerable effort was expended in developing such information. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

3.     Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "Duffy and Lewis improperly acquired…through Lewis's downloading of the trade secrets and transmitting them to his personal email" as alleged in Plaintiffs' First Amended Complaint ¶95.

**ANSWER:** CityBase objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase respond that Plaintiffs' investigation into Lewis's "downloading of the trade secrets and transmitting them to his personal email" is ongoing with respect to trade secrets other than the Confidential Deck and the Confidential Excel. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

-5-

4.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that Duffy "accessed" on his iPhone as alleged in Plaintiffs' First Amended Complaint ¶67.

**ANSWER:** CityBase objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that Plaintiffs' investigation into trade secrets Duffy "accessed" from his personal iPhone other than the Confidential Deck and the Confidential Excel is ongoing. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Plaintiff's attention at a later time.

5.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "Duffy and Lewis have taken and retained…including by virtue of their intimate knowledge of [plaintiffs'] business, which they cannot unlearn – and intend to use these trade secrets to benefit CORE and harm Plaintiffs" as alleged in Plaintiffs' First Amended Complaint ¶67.

**ANSWER:** CityBase objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team

-7-

meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues— and considerable effort was expended in developing such information. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

6.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that "Duffy and Lewis had access to, were exposed to, and took part in developing" as alleged in Plaintiffs' First Amended Complaint ¶112.

**ANSWER:**

CityBase objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further

objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent

threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

7.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege Duffy and/or Lewis will "inevitably use…for their and CORE's benefit and to Plaintiffs' detriment" as alleged in Plaintiffs' First Amended Complaint ¶113.

**ANSWER:** CityBase objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products]

-11-

and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–

1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill.

App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant

employee "could not operate or function without relying on [employer's] alleged trade secrets");

*Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding

irreparable harm flowing from trade secret misappropriation where former employees' roles at a

competing business would inevitably lead to their use of plaintiff's trade secrets). This

information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs'

competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and

differentiate themselves with customers and prospective customers in the marketplace—thus

directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort

was expended in developing such information. CityBase reserves the right to revise, supplement,

or clarify this response based on any facts, documents, evidence, or other contentions that may

develop or come to CityBase's attention at a later time.

8.      Other than the Excel and the Deck, identify with particularity and in detail all
trade secrets of plaintiffs as to which plaintiffs seek injunctive relief unless otherwise identified
in response to Interrogatories 1-5 above.

**ANSWER:**

CityBase objects to this Interrogatory the extent that it calls for a description of

documents or information within Defendants' possession, custody, or control. CityBase further

objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to

ask CityBase to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, CityBase responds that, in

addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such

-12-

documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms  Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, and key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill.

-13-

App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

9.      Identify with particularity and in detail which pages of the Excel are your trade secret. Your answer should include an identification of the factual basis for your trade secret claim including disclosure of the date the Excel was created, the source of the data for the Excel, the identity of the person(s) who contributed to the Excel and the nature of their contribution, the use to which the Excel was put, the persons who received one or more iterations of the Excel, persons with access to the Excel, security protections associated with the Excel, where the Excel features in the overall security protocols you have in place at for your most important data, calculations of the value of the Excel, accounting records in which you value, for any purpose, a trade secret you own.

**ANSWER:** CityBase objects to this Interrogatory insofar it calls for a description of documents that speak for themselves. CityBase further objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. CityBase furthers object to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Plaintiffs to identify all "trade secrets." CityBase further

-14-

objects to the Interrogatory as vague and ambiguous because it purports to require the identify of

the persons who "contributed to" the Confidential Excel and "the nature of their contribution."

Subject to and without waiving the foregoing Objections, CityBase identifies the

following pages of the Confidential Excel as trade secret: 1–4, 5, 6–11, 12–21, 22–26, 27–29,

30–38, 39–48, 49–56, 57, 58–61, 62–101, 102–113, 114–133, 134, 135, 136, 137.

Plaintiffs' investigation into the development and use of the Confidential Excel is

ongoing. CityBase reserves the right to revise, supplement, or clarify this response based on any

facts, documents, evidence, or other contentions that may develop or come to CityBase's

attention at a later time.

10.    Identify with particularity and in detail which pages of the Deck are your trade
secret. Your answer should include an identification of the factual basis for your trade secret
claim including disclosure of the date the Deck was created, the source of the data for the Deck,
whether the trade secret is based on factual information that is generally known in the public
domain, which business concepts expressed in in the Deck for the Go To Market Strategy are
concepts that are not generally known in the public domain, the identity of the person(s) who
contributed to the Deck and the nature of their contribution, the use to which the Deck was put,
the persons who received one or more iterations of the Deck, persons with access to the Deck,
security protections associated with the Deck, where the Deck features in the overall security
protocols you have in place at for your most important data, calculations of the value of the
Deck, records of follow-through on the Go To Market Strategy and metrics associated with
success, the identity of any client you obtained as a result of the Go To Market Strategy.

**ANSWER:** CityBase objects to this Interrogatory insofar it calls for a description of

documents that speak for themselves. CityBase further objects to this Interrogatory the extent

that it calls for a description of documents or information within Defendants' possession,

custody, or control. CityBase further objects to this Interrogatory to the extent it asks for a legal

conclusion insofar as it purports to ask CityBase to identify all "trade secrets."  CityBase also

objects to the Interrogatory as vague and ambiguous because it purports to require the identify of

the persons who "contributed to" the Confidential Deck and "the nature of their contribution"

and any "follow-through" on the strategy contained in the Confidential Deck and "metrics associated with success."

Subject to and without waiving the foregoing Objections, CityBase identifies the following pages of the Confidential Deck as trade secret: 2–11, 13–22.

Plaintiffs' investigation into the development and use of the Confidential Deck is ongoing. CityBase reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to CityBase's attention at a later time.

Dated: July 19, 2024                                         Respectfully submitted,

                                                             */s/ Timothy R. Farrell*
                                                             Timothy R. Farrell

                                                             **ROPES & GRAY LLP**
                                                             Firm ID: 47644

                                                             Jeffrey J. Bushofsky
                                                             Timothy R. Farrell
                                                             191 North Wacker Drive
                                                             32nd Floor
                                                             Chicago, Illinois 60606
                                                             Tel: (312) 845-1200
                                                             Fax: (312) 845-5500
                                                             jeffrey.bushofsky@ropesgray.com
                                                             timothy.farrell@ropesgray.com

                                                             Gregory L. Demers (*pro hac vice*)
                                                             Jane McGraw (*pro hac vice*)
                                                             Daniel Murphy (*pro hac vice*)
                                                             Prudential Tower, 800 Boylston Street
                                                             Boston, MA 02199-3600
                                                             Tel: (617) 951-7000
                                                             Fax: (617) 951-7050
                                                             gregory.demers@ropesgray.com
                                                             jane.mcgraw@ropesgray.com
                                                             daniel.murphy@ropesgray.com

Docusign Envelope ID: 932034G9-1E38-480G-BG30-1316C93E4EB1

Ethan M. Weinberg (*pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs GTY Technology*
*Holdings Inc. and CityBase, Inc.*

Docusign Envelope ID: 932034G9-1E38-480G-BG30-1316C93E4EB1

## VERIFICATION OF INTERROGATORY RESPONSES

I certify that I have read the foregoing answers and, based on reasonable inquiry, that such answers are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2024

DocuSigned by:

*Tom Amburgey*

A1D56EEE9C5F400...

Tommy Amburgey, Jr.

-18-