Exhibit 5

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 9

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

FILED
7/24/2024 10:20 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH04952
Calendar, 9
28638870

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| GTY TECHNOLOGY HOLDINGS, INC., d/b/a EUNA SOLUTIONS and CITYBASE, INC. | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 2024 CH 04952 |
| WONDERWARE, INC. (d/b/a CORE BUSINESS TECHNOLOGIES), MICHAEL DUFFY, and CHRISTOPHER LEWIS, | ) )  Hon. Cecila Horan |
| Defendants. | ) |

## CORE AND DUFFY'S EMERGENCY MOTION
## TO RE-SET SCHEDULE ON PRELIMINARY INJUNCTION
## AND COMPEL DISCLOSURE OF TRADE SECRETS IF ANY

### Statement Of Emergency

Plaintiffs seek to prosecute a preliminary injunction as to three trade secrets claims (First Amended Complaint, "1AC" Counts I, II and III) but refuse to identify the specific trade secrets at issue (the so-called "Excel" and "Deck" have been resolved). As to additional purported trade secrets, Defendants sought – pursuant to Court ordered expedited interrogatories - clarification of any specific document or computer code that plaintiffs believe is (a) a trade secret, and (b) in defendants' possession. Plaintiffs responded with conclusions and generalities and refused to identify specifics even after a 201(k) conference. Plaintiffs' intransigence is particularly frustrating because) plaintiffs have robust internal monitoring that would allow them – with specificity – to detail exactly what defendants purportedly took (Ex. 1 Duffy Decl., ¶ 2).[1]

The emergency underlying this Motion is a court ordered deadline of July 26, 2024 for Defendants to formulate trade secrete discovery (Ex. 2, Discovery Order, ¶ 2). ***Based on plaintiffs' refusal to provide any trade secret specifics, Defendants simply cannot comply with the deadline set by the Court's order.*** Defendants cannot be forced to grope in the dark to get disclosure of the case plaintiffs plan to present. Accordingly, the preliminary injunction motion should be taken off the calendar to be re-scheduled once plaintiffs have actually disclosed the purported trade secrets.

---

[1] The Court will recall the ease by which plaintiffs were able to identify the Excel and the Deck as purported trade secrets that came into Lewis' possession during his employment

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

## Argument

Plaintiffs' complaint was filed on May 24, 2024, amended June 18, 2024. The 1AC includes three trade secrets counts (1AC, Counts I, II and III) predicated on two documents, the "Excel" and the "Deck." On July 3, 2024, the date set for hearing on plaintiffs' Motion for TRO, the parties entered into an Agreed Order resolving the issues of the Excel and the Deck. That same date, the Court scheduled a preliminary injunction hearing for October 23-24, 2024 and the parties thereafter drafted a scheduling order providing for expedited discovery (Ex. 2).

Plaintiffs' first deadline under the scheduling order was to respond, by Friday July 19, 2024, to a limited set of defendants' interrogatories directed at two issues: (1) what trade secrets are purportedly at issue in the case, and (2) the factual basis for plaintiffs' contention that any portions of the Excel or the Deck are trade secrets. What Plaintiffs provided, however, was not disclosure, but obfuscation (Ex. 3, Interrog. 1-8).[2] The "disclosure" is not meaningful and is wholly conclusory. According to Plaintiffs, their "trade secrets" are every document that exists in the company, including some 30 trade secret subcategories, including, for example, plaintiffs' "data". What data? No review of the interrogatory answer gives the reader any clue.[3] Plaintiffs cannot prosecute a trade secret claim without knowing (and identifying in discovery) what their trade secrets are. After all, the essence of a trade secret is its value to the plaintiff. If the "trade secret"

---

[2] Plaintiffs repeatedly describe their "trade secrets" as follows: "documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, key contract terms, and…Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, , and materials and content from Executive Leadership Team meetings. ***Mike Duffy, the founder of CityBase, states in his declaration that he cannot begin to identify what plaintiffs are talking about and the absence of specificity complicates his ability to consult with his counsel about discovery*** (Ex. 1, ¶ 1).

[3] Furthermore, it simply cannot be that every bit of "marketing and business strategy" and "business systems" are a trade secrets. Such strategies are employed at every business. Likewise, "contract terms" and "key contract terms" cannot be trade secrets because Euna's government contracts are publicly available under FOIA and other means.

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

cannot be readily identified, it can have no value. ***And, if there is no readily identifiable trade secret, there is no emergency justifying a preliminary injunction.***

Compounding the problem is the revised motion for preliminary injunction served on July 22, 2024. There (p. 2), Plaintiffs state their intention to use the discovery process to "elucidate" whatever "additional trade secret[s]" will be the subject of the motion for preliminary injunction. It appears that, at this time, plaintiffs have no idea what trade secrets they plan to present at the preliminary injunction hearing and are going to use the discovery process to try to find a case that they do not now have.

As to the Excel and the Deck, Plaintiffs similarly refused to provide any factual basis for their assertions that those documents are (or even contain) trade secrets (Ex. 3, Interrog. 9-10).

Defendants conducted a Rule 201(k) "meet and confer" with Plaintiffs' counsel on July 23, 2024. Plaintiffs refused to provide further specificity and instead claim that they need discovery from Defendants before they can identify their trade secrets and what trade secrets are in Defendants' possession. The assertion is contrary to (a) Defendants' ability to identify the Excel and the Deck, and (b) plaintiffs' ability to forensically investigate any access or transfer of information from Duffy (and Lewis) of Plaintiffs' files while employed by Plaintiffs (*see* Ex. 1, Duffy Decl., *see also* 6/10/24 Amburgey Decl. supporting TRO Motion at ¶ 69-70). Defendants are suffering extreme prejudice in trying to formulate draft discovery, by the July 26 deadline having no idea what documents to request or what depositions (party or third-party) to pursue. Plaintiffs are engaging in "hide the ball" and the prejudice cannot continue.

One wonders how Plaintiffs can, under Ill. Sup. Ct. R. 137, continue to press their motion for preliminary injunction when Plaintiffs currently have no factual basis to believe that defendants have or will use any of Plaintiffs' trade secrets or even that Plaintiffs actually possess any trade secrets. Defendants will seek their fees under the Illinois Trade Secrets Act.

FILED DATE: 7/24/2024 10:20 AM  2024CH04952

WHEREFORE, Defendants request that the Court enter an order: (a) suspending the current schedule and (b) ordering either (i) an actual answer to the trade secrets interrogatory or (ii) plaintiffs to abandon their request for injunctive relief based on trade secret claims.

Dated: July 24, 2024       Respectfully submitted,
Daniel Lynch          Wonderware, Inc. (d/b/a Core Business
Amy J. Kanarowski        Technologies) and Michael Duffy
LYNCH THOMPSON LLP #60040
150 S. Wacker Dr., Ste 2600
Chicago, Illinois 60606
(312) 346-1600         /s/ *Daniel Lynch*
docketing@lynchthompson.com     *One of their Attorneys*

4

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

Exhibit 1

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| GTY TECHNOLOGY HOLDINGS, INC., d/b/a | ) | |
| EUNA SOLUTIONS and CITYBASE, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2024 CH 04952 |
| WONDERWARE, INC. (d/b/a CORE BUSINESS | ) | |
| TECHNOLOGIES), MICHAEL DUFFY, and | ) | Hon. Cecilia Horan |
| CHRISTOPHER LEWIS, | ) | |
| Defendants. | ) | |

<u>**SUPPLEMENTAL DECLARATION OF MICHAEL DUFFY**</u>

I, Declarant Michael Duffy, having been sworn, state that I am over the age of 21, and have personal knowledge of the matters stated herein.

1.     I am the founder of CityBase and worked there for 9+ years until I was fired in January 2024. I have reviewed the answers to trade secrets interrogatories attached to the Motion to Re-Set Schedule on Preliminary Injunction as Exhibit 3. Based on my review of those answers to interrogatories, I have no idea what in the long list of possible materials CityBase believes is a trade secret, and as the CityBase founder, I think I would know if CityBase had materials that it considered its trade secrets. Based on the inadequate disclosure, I cannot properly consult with my counsel about discovery needed on the trade secret claim without more information about what CityBase is now contending are the trade secrets.

2.     I am stunned that CityBase persists in alleging that I "took" information from CityBase because CityBase has robust security and monitoring systems governing its documents, emails, servers and even its wifi access that allows CityBase to determine exactly what documents are being accessed by employees and when. Those systems were apparently used to determine that Chris Lewis had accessed the "Excel" and the "Deck" during his employment and emailed a link to those files to his personal email address. If there were any similar facts as to anything I "took," CityBase would know exactly what that was, but so far, has not disclosed that there is anything similar.

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

3.　　I declare under penalty of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters that I verily believe the same to be true.

_____

Michael Duffy

FILED DATE: 7/24/2024 10:20 AM  2024CH04952

Exhibit 2

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| GTY TECHNOLOGY HOLDINGS, INC., d/b/a | ) | |
| EUNA SOLUTIONS and CITYBASE, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2024 CH 04952 |
| WONDERWARE, INC. (d/b/a CORE BUSINESS | ) | |
| TECHNOLOGIES), MICHAEL DUFFY, and | ) | Calendar 9 |
| CHRISTOPHER LEWIS, | ) | |
| Defendants. | ) | Hon. Cecilia Horan |

### AGREED SCHEDULING ORDER

Pursuant to the Court's July __, 2024 Order ordering the Parties to submit an agreed discovery scheduling order regarding discovery and briefing for Plaintiffs' forthcoming Motion for Preliminary Injunction by July 12, 2024, the Parties file this Agreed Discovery Scheduling Order. The Parties appearing through Counsel, and the Court being advised in the premises;

**IT IS HEREBY ORDERED THAT**:

1.       All Parties shall by July 12, 2024, serve initial interrogatories .  The Parties shall answer their respective initial interrogatories no later than July 19, 2024.

2.       All Parties shall serve additional written discovery by July 26, 2024.  Responses to Plaintiffs' requests for production served prior to July 12, 2024 shall be served by August 19, 2024; responses to written other discovery shall be served by August 30, 2024. Documents may be produced on a rolling basis in response to requests for production, and (as to requests submitted as of the date of this Order) the parties will substantially complete production by September 4, 2024.  As to document requests not yet served, Defendants will make best efforts to substantially complete production by September 4, 2024.   Discovery motions pertaining to written discovery (including, for the avoidance of doubt, requests for production) shall be presented on or before the September 16, 2024 discovery status conference previously set by the Court.

145969943_2

FILED DATE: 7/24/2024 10:20 AM    2024CH04952

3.      The Parties shall produce for deposition, subject to witness availability, all non-third party fact witnesses they intend to offer in support of or opposition to Plaintiffs' Motions for Preliminary Injunction, to be conducted prior to September 20, 2024.  Plaintiffs shall make their best efforts to produce their witnesses during the week of September 9.  Defendants shall make their best efforts to produce their witnesses during the week of September 16. Notwithstanding the preceding sentences in this paragraph, the parties reserve all rights to notice depositions at the time of their choosing, and to object to such notices, subject to the applicable rules.

4.      Subject to their availability, depositions of third-party witnesses offered by the parties in support of, or in opposition to, the preliminary injunction will be conducted on a schedule convenient to the third-party witnesses, to be conducted prior to September 20, 2024.

5.      Any expert disclosures shall be made by September 25, 2024, and depositions of any such experts shall be conducted during the week of September 30, 2024.

6.      Plaintiffs shall file their revised preliminary injunction motion setting forth the specific relief requested and the grounds therefore on or before July 22, 2024.

7.      Plaintiffs shall file their opening brief in support of their preliminary injunction motion on or before September 23, 2024 (provided that they are entitled to file a supplement with any discovery or expert material developed during or after the preparation of that brief).

8.      Defendants shall file any opposition brief on or before October 11, 2024 (provided that they are entitled to file a supplement with any discovery or expert material developed during or after the preparation of that brief).

Case 2024 CH 04952
Page 3 of 3

9.      Plaintiffs shall file any reply brief on or before October 18, 2024  (provided that

they are entitled to file a supplement with any discovery or expert material developed during or

after the preparation of that brief).

Entered:

_____

Order Prepared by:

Jeffrey J. Bushofsky
Timothy R. Farrell
Ropes & Gray LLP (Firm ID: 47644)
191 N. Wacker Drive
32nd Floor
Chicago, IL 60606
jeffrey.bushofsky@ropesgray.com
timothy.farrelll@ropesgray.com

Gregory L. Demers (*pro hac vice*)
Jane McGraw (*pro hac vice*)
Daniel Murphy (*pro hac vice*)
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
gregory.demers@ropesgray.com
jane.mcgraw@ropesgray.com
daniel.murphy@ropesgray.com

Ethan M. Weinberg (*pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
Fax: (212) 596-9090
ethan.weinberg@ropesgray.com
*Counsel for Plaintiffs*

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

Exhibit 3

Docusign Envelope ID: 93203469-1E38-480C-BC38-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| GTY TECHNOLOGY HOLDINGS, INC., d/b/a | ) | |
| EUNA SOLUTIONS and CITYBASE, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2024 CH 04952 |
| WONDERWARE, INC. (d/b/a CORE BUSINESS | ) | |
| TECHNOLOGIES), MICHAEL DUFFY, and | ) | Calendar 9 |
| CHRISTOPHER LEWIS, | ) | |
| Defendants. | ) | Hon. Cecilia Horan |

**PLAINTIFF'S RESPONSES TO DEFENDANT CORE'S TRADE SECRET
INTERROGATORIES**

Plaintiff GTY Technology Holdings Inc., d/b/a Euna Solutions ("Euna", and together with

CityBase, Inc. ("CityBase"), "Plaintiffs"), by and through its undersigned attorneys, submit these

Responses to Defendant Wonderware, Inc., d/b/a CORE Business Technologies' ("CORE") First

Set of Interrogatories.

      1.     Other than the Excel and the Deck, identify with particularity and in detail all
"formulas, patterns, devices and compilations of information that are used in [plaintiffs'] business
and provide Plaintiffs with actual and potential economic value as a result of not being generally
known to other persons" as alleged in Plaintiffs' First Amended Complaint ¶91.

    **ANSWER:** Euna objects to this Interrogatory insofar as it purports to request the identity

of *all* "formulas, patterns, devices and compilations of information that are used in [plaintiffs']

business," which is overbroad and beyond the scope of proper discovery under Illinois Supreme

Court Rule 201(c). Euna will construe this Interrogatory to be limited to those "formulas, patterns,

devices and compilations of information that are used in [plaintiffs'] business" that Defendants

have, may have, or threaten to misappropriate from Plaintiffs. Euna further objects to the extent

that it calls for a description of documents or information within Defendants' possession, custody,

or control.

    Subject to and without waiving the foregoing Objections, Euna responds that, in addition

to the "formulas, patterns, devices and compilations that are used in [plaintiffs'] business and

provide Plaintiffs with actual and potential economic value as a result of not being generally known to other persons" contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, key contract terms, and Euna further responds that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, , and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of

-2-

Docusign Envelope ID: 93203469-1E38-480C-BC39-1316C93E4EB1

Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

2.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "CORE, Duffy, and Lewis are in possession of…through Duffy's and Lewis's improper and unlawful extraction thereof from Plaintiffs' systems" as alleged in Plaintiffs' First Amended Complaint ¶103.

**ANSWER:** Euna objects to this Interrogatory to the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and  leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms.  Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing

FILED DATE: 7/24/2024 10:20 AM  2024CH04952

Docusign Envelope ID: 93203469-1E38-480G-BG30-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM  2024CH04952

of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Euna further responds that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "<u>Software</u>"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues— and considerable effort was expended in developing such information. Euna reserves

Docusign Envelope ID: 93203469-1E38-480C-BC30-1316C93E4EB1

the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna 's attention at a later time.

3.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "Duffy and Lewis improperly acquired…through Lewis's downloading of the trade secrets and transmitting them to his personal email" as alleged in Plaintiffs' First Amended Complaint ¶95.

**ANSWER:** Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that Plaintiffs' investigation into Lewis's "downloading of the trade secrets and transmitting them to his personal email" is ongoing with respect to trade secrets other than the Confidential Deck and the Confidential Excel. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

4.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that Duffy "accessed" on his iPhone as alleged in Plaintiffs' First Amended Complaint ¶67.

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

**ANSWER:** Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that Plaintiffs' investigation into trade secrets Duffy "accessed" from his personal iPhone other than the Confidential Deck and the Confidential Excel is ongoing. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

5.    Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege that "Duffy and Lewis have taken and retained…including by virtue of their intimate knowledge of [plaintiffs'] business, which they cannot unlearn – and intend to use these trade secrets to benefit CORE and harm Plaintiffs" as alleged in Plaintiffs' First Amended Complaint ¶67.

**ANSWER:** Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and  leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms.  Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat

Docusign Envelope ID: 93203469-1E38-480G-BG39-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues— and considerable effort was expended in developing such information. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

6.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that "Duffy and Lewis had access to, were exposed to, and took part in developing" as alleged in Plaintiffs' First Amended Complaint ¶112.

**ANSWER:**

Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna  further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Docusign Envelope ID: 93203469-1E38-480C-BG30-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM  2024CH04952

Subject to and without waiving the foregoing Objections, Euna responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms. Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being

Docusign Envelope ID: 93203469-1E38-489G-BG3D-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

7.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs that plaintiffs allege Duffy and/or Lewis will "inevitably use…for their and CORE's benefit and to Plaintiffs' detriment" as alleged in Plaintiffs' First Amended Complaint ¶113.

**ANSWER:** Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee

-10-

Docusign Envelope ID: 93203469-1E38-480G-BG38-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

information, prospective customer and  leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product pipeline, and key contract terms.   Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could

Docusign Envelope ID: 93203469-1E38-480C-BC30-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

8.      Other than the Excel and the Deck, identify with particularity and in detail all trade secrets of plaintiffs as to which plaintiffs seek injunctive relief unless otherwise identified in response to Interrogatories 1-5 above.

**ANSWER:**

Euna objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets."

Subject to and without waiving the foregoing Objections, Euna responds that, in addition to the trade secrets contained in the Confidential Deck and the Confidential Excel, such documents and information include Plaintiffs' nonpublic customer lists, customer profiles, employee information, prospective customer and  leads lists, marketing and business strategies, pricing, contract terms, competitive vulnerabilities, growth plans, technical information, code, product

-12-

Docusign Envelope ID: 93203469-1E38-480G-BG39-1316C93E4EB1

pipeline, and key contract terms  Defendants have already conceded that they took the Confidential Deck and the Confidential Excel, which contain trade secret information and are now protected under a Court order. Defendants were further shown to have accessed sensitive information on Plaintiffs' systems in the months before they resigned. Defendants are also known to have used their personal devices to work on and store Plaintiffs' confidential documents and information, and Duffy in particular founded CityBase and has served as its CEO and overseeing of its entire business for nine years, establishing the inference that Defendants possess additional materials containing Plaintiffs' trade secrets, which discovery will confirm. Plaintiffs further respond that Defendants had intimate access to Plaintiffs' most sensitive documents and information, relating to Plaintiffs' software (including all algorithms, methods, techniques and processes revealed by such software, collectively "Software"), data, web design, and other technical aspects of their products, business systems, customer needs and requirements documentation, training materials, finances, operations, and compensation and retention of key personnel, and key contract terms, and materials and content from Executive Leadership Team meetings—information that Defendants cannot unlearn and will inevitably rely on unless they "possess[] an uncanny ability to compartmentalize information," and that pose an imminent threat in the hands of a competitor due to the "substantial advantage" Defendants will achieve, including "by knowing exactly how [Plaintiffs] will price, distribute, and market [their products] and being able to respond strategically." *See, PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269–1270 (7th Cir. 1995) (applying Illinois law); *see also Strata Marketing Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1070–71 (2000) (finding inevitable disclosure adequately pled where defendant employee "could not operate or function without relying on [employer's] alleged trade secrets"); *Tate & Lyle Ingredients Americas LLC v. Craig*, 2017 IL App (4th) 160886-U, ¶¶ 39–40 (finding irreparable harm flowing from trade

-13-

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

secret misappropriation where former employees' roles at a competing business would inevitably lead to their use of plaintiff's trade secrets). This information is of great value to Plaintiffs because it constitutes the entirety of Plaintiffs' competitive strategy and is therefore vital to Plaintiffs' ability to operate their business and differentiate themselves with customers and prospective customers in the marketplace—thus directly contributing to Plaintiffs' ability to generate all of its revenues—and considerable effort was expended in developing such information. Euna reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

9.      Identify with particularity and in detail which pages of the Excel are your trade secret. Your answer should include an identification of the factual basis for your trade secret claim including disclosure of the date the Excel was created, the source of the data for the Excel, the identity of the person(s) who contributed to the Excel and the nature of their contribution, the use to which the Excel was put, the persons who received one or more iterations of the Excel, persons with access to the Excel, security protections associated with the Excel, where the Excel features in the overall security protocols you have in place at for your most important data, calculations of the value of the Excel, accounting records in which you value, for any purpose, a trade secret you own.

**ANSWER:** Euna objects to this Interrogatory insofar it calls for a description of documents that speak for themselves. Euna further objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Plaintiffs to identify all "trade secrets." Euna further objects to the Interrogatory as vague and ambiguous because it purports to require the identify of the persons who "contributed to" the Confidential Excel and "the nature of their contribution."

Subject to and without waiving the foregoing Objections, Euna identifies the following pages of the Confidential Excel as trade secret: 1–4, 5, 6–11, 12–21, 22–26, 27–29, 30–38, 39–48, 49–56, 57, 58–61, 62–101, 102–113, 114–133, 134, 135, 136, 137.

-14-

Docusign Envelope ID: 93203469-1E38-489G-8G39-1316C93E4EB1

Plaintiffs' investigation into the development and use of the Confidential Excel is ongoing. Plaintiff reserves the right to revise, supplement, or clarify this response based on any facts, documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

10.     Identify with particularity and in detail which pages of the Deck are your trade secret. Your answer should include an identification of the factual basis for your trade secret claim including disclosure of the date the Deck was created, the source of the data for the Deck, whether the trade secret is based on factual information that is generally known in the public domain, which business concepts expressed in in the Deck for the Go To Market Strategy are concepts that are not generally known in the public domain, the identity of the person(s) who contributed to the Deck and the nature of their contribution, the use to which the Deck was put, the persons who received one or more iterations of the Deck, persons with access to the Deck, security protections associated with the Deck, where the Deck features in the overall security protocols you have in place at for your most important data, calculations of the value of the Deck, records of follow-through on the Go To Market Strategy and metrics associated with success, the identity of any client you obtained as a result of the Go To Market Strategy.

**ANSWER:** Euna objects to this Interrogatory insofar it calls for a description of documents that speak for themselves. Euna further objects to this Interrogatory the extent that it calls for a description of documents or information within Defendants' possession, custody, or control. Euna further objects to this Interrogatory to the extent it asks for a legal conclusion insofar as it purports to ask Euna to identify all "trade secrets." Euna also objects to the Interrogatory as vague and ambiguous because it purports to require the identify of the persons who "contributed to" the Confidential Deck and "the nature of their contribution" and any "follow-through" on the strategy contained in the Confidential Deck and "metrics associated with success."

Subject to and without waiving the foregoing Objections, Euna identifies the following pages of the Confidential Deck as trade secret: 2–11, 13–22.

Plaintiffs' investigation into the development and use of the Confidential Deck is ongoing. Euna reserves the right to revise, supplement, or clarify this response based on any facts,

-15-

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

Docusign Envelope ID: 93203469-1E38-489C-8C30-1316C93E4EB1

FILED DATE: 7/24/2024 10:20 AM   2024CH04952

documents, evidence, or other contentions that may develop or come to Euna's attention at a later time.

Dated: July 19, 2024

Respectfully submitted,

*/s/ Timothy R. Farrell*
Timothy R. Farrell

**ROPES & GRAY LLP**
Firm ID: 47644

Jeffrey J. Bushofsky
Timothy R. Farrell
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5500
jeffrey.bushofsky@ropesgray.com
timothy.farrell@ropesgray.com

Gregory L. Demers (*pro hac vice*)
Jane McGraw (*pro hac vice*)
Daniel Murphy (*pro hac vice*)
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
gregory.demers@ropesgray.com
jane.mcgraw@ropesgray.com
daniel.murphy@ropesgray.com

Ethan M. Weinberg (*pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Plaintiffs GTY Technology*
*Holdings Inc. and CityBase, Inc.*

-16-

Docusign Envelope ID: 93203469-1E38-489C-BC30-1316C93E4EB1

## <u>VERIFICATION OF INTERROGATORY RESPONSES</u>

I certify that I have read the foregoing answers and, based on reasonable inquiry, that such answers are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2024

DocuSigned by:

*Tom Amburgey*

A1D56EEE9C5F400...

Tommy Amburgey, Jr.

-17-