# EXHIBIT 2

EXECUTION VERSION

## FAIR COMPETITION AGREEMENT

In consideration of the commencement or continuation of your employment with GTY Technology Holdings Inc. and/or any of its current or future parents, subsidiaries, affiliates, and/or successors (collectively, the "Company"), and the compensation and other benefits you will receive from the Company (your "Employment"), you agree, intending to be legally bound, as follows:

### Acknowledgements and Representations

1. <u>Supplemental Terms</u>. You acknowledge that you have received a separate offer letter (the "Offer Letter") that sets forth the relevant terms concerning your compensation arrangements with the Company. In the event of any conflict between this Fair Competition Agreement (this "Agreement") and the Offer Letter, the terms of the Offer Letter shall govern.

2. <u>Acceptance</u>. You acknowledge that the Company considers the protections provided by this Agreement to be necessary to safeguard its Customer Confidences, Confidential Information, Intellectual Property, Customer relationships (each as defined in this Agreement) and other business interests and is willing to commence or continue your Employment only if you agree to accept the obligations set forth herein. In the event the transactions contemplated by the Merger Agreement are not consummated, this Agreement will be void ab initio and of no force or effect

3. <u>No Conflicting Obligations</u>. You represent that you do not have any contractual or other obligations that would conflict with your Employment by the Company. In particular, you represent that you are not bound by any agreement, understanding or other obligation (including, without limitation, any non-competition or nonsolicitation agreement) with or to any person or entity that prohibits you from accepting or continuing your Employment by the Company and fully performing all your duties for the Company, except as described on Annex A attached hereto.

4. <u>Documents and Confidential Information Belonging to Former Employers and Other Third Parties</u>. You also represent that you have not taken or retained, and do not have in your possession, any documents, in either electronic or hard copy form, that belong to any former employer (which, for purposes of this Agreement, shall include persons, corporations, and other entities for which you have acted as an independent contractor or consultant) and that you will not use or disclose in your work for the Company any trade secrets or confidential information belonging to any former employer or other third party.

### At Will Employment and Notice Period

5. <u>At Will Nature of Employment</u>. You acknowledge that neither the Offer Letter nor this Agreement gives you any right to employment or continued employment with the Company and that, unless otherwise provided in another writing executed by an officer of the Company and you, your Employment with the Company shall be at the will of both the Company and you. This means that you are free to resign at any time (subject to providing written notice pursuant to any applicable Notice Period as set forth below), for any or no reason, and, similarly, the Company is free to terminate your Employment at any time, for any or no reason, subject to the terms of this Agreement and the Offer

1

101887693v2

Letter. Your Employment will continue in effect, however, until terminated by either the Company or you.

6. (a) You understand and agree that you will have access to Customer Confidences, Confidential Information, Intellectual Property and Customer relationships belonging to the Company. You recognize and agree that it is reasonable and necessary for the Company to protect such Customer Confidences, Confidential Information, Intellectual Property, and Customer relationships and to provide a smooth transition if you choose to leave the Company. Consequently, you agree to provide the Company with the following periods of prior notice (the "Notice Period"), in writing, depending on your title at the time of your resignation, of your intent to terminate your employment with the Company: President and Executive Vice Presidents – three (3) months; Senior Vice Presidents – two (2) months; and Vice Presidents and below – one (1) month. If such notice is provided to the Company prior to the bonus payment date for that year, (i) you shall not be entitled to receive any annual or long-term incentive compensation award for that year and (ii) vesting of deferred amounts not yet vested shall cease upon notice of your intent to terminate your employment.

(b) If, at the time you provide notice in accordance with this paragraph 6, you intend or contemplate alternative employment, you also agree to provide sufficient details, in writing, about such alternative employment to allow the Company to meaningfully exercise its rights under this paragraph 6.

(c) During the Notice Period, you will: (i) perform any reasonable duties and responsibilities the Company requests; (ii) devote all of your working time, labor, skill and energies to the business and affairs of the Company; (iii) be paid your base salary; and (iv) be entitled to continue to participate in the Company's employee benefit plans as provided for herein. After you have given notice of your resignation, the Company may, at any time during the Notice Period and in its sole and absolute discretion, (A) elect to place you on paid leave for all or any part of such Notice Period, subject to applicable law, (B) relieve you of some or all of your duties as an employee of the Company and/or exclude you from its premises or (C) shorten or eliminate the Notice Period and accelerate the date on which your resignation will be effective without any obligation to compensate you for the period between the date that the Company effected the acceleration of the effective date of your resignation and the date on which the Notice Period was originally due to end. For the avoidance of doubt, you agree that the taking of any action described in the preceding sentence by the Company shall not constitute a breach of this Agreement or your Offer Letter.

(d) You further agree that during your employment, including during the Notice Period, whether or not the Company requires you to work during the Notice Period, you will not provide services for any Competitor including, without limitation, engaging in, directly or indirectly, or managing or supervising personnel engaged in, any activity (i) which is similar or substantially related to any activity in which you were engaged, in whole or in part, at the Company; (ii) for which you had direct or indirect managerial or supervisory responsibility at the Company; or (iii) which calls for the application of the same or similar specialized knowledge or skills as those used by you in your activities with the Company. For purposes of this Agreement, a "Competitor" means a business enterprise that (A) engages in any activity, (B) proposes to engage in any activity or (C) owns or controls a significant interest in or is a subsidiary or affiliate of any entity, which, in either case, competes with or proposes to compete with any activity in which the Company is engaged, such as, without limitation, developing and licensing software for federal, state and local governments and governmental agencies.

2

101887693v2

**Duties**

7.      Nature of Duties.  Except to the extent expressly permitted in your Offer Letter or as disclosed on Annex A, during your Employment, you shall not engage in any other business activities without the prior written consent of the Company.  In particular, during your Employment, you agree not to work for or assist, whether or not for profit or personal gain, any Competitor or engage in any business or activity that is similar to or competes directly or indirectly with the Company or is inimical to the best interests of the Company or that would interfere with your ability to work for the Company on a full-time basis.

8.      Duty to Disclose Business Opportunities.  During your Employment, you shall (a) promptly disclose to the Company all business opportunities that are presented to you in your capacity as an officer or employee of the Company or that are of a similar nature to the Company's existing business or a type of business the Company is currently developing or considering and (b) not usurp or take advantage of any such business opportunity personally or assist any third party in doing so without first offering such opportunity to the Company.

**Confidentiality, Non-Disclosure and Intellectual Property**

9.      Customer Confidences.  As used in this Agreement, "Customer" means any person, corporation or other entity (a) for which the Company has performed any services or to which it has sold any products, (b) with which it has engaged in any business activity or (c) from which the Company has actively solicited business or discussed other business arrangements in the year preceding the termination of your Employment.  The Company's Customers expect that the Company will hold all business-related information about them, including the fact that they are doing or are considering doing business with the Company and the specific matters on which they are or may be doing business, in the strictest confidence ("Customer Confidences").  You acknowledge that, during the course of your Employment, you will have access to such Customer Confidences.  You also acknowledge and agree that all relationships with Customers that you initiate or develop during your Employment with the Company belong to the Company, not to you personally.

10.      Confidential Information.  You acknowledge that, during the course of your Employment, you will have access to information relating to the Company's business that provides the Company with a competitive advantage, is not generally known by persons outside the Company and could not easily be determined or learned by someone outside the Company ("Confidential Information").  Such Confidential Information, whether or not explicitly designated as confidential, includes both written information and information not reduced to writing and includes but is not limited to information about Customers, trade secrets, internal corporate policies and strategies, pricing, financial and sales information, personnel information, forecasts, formulas, compilations, software programs, data, databases, directories, research, client lists and business and marketing plans, and any modifications or enhancements of any of the foregoing.  You further agree that if you previously rendered services to the Company (e.g., as an independent contractor or consultant) or otherwise gained knowledge of Customer Confidences and/or Confidential Information (e.g., by executing a Non-Disclosure Agreement prior to your rendering services to the Company in any capacity), your obligations under any such agreement between you and the Company to preserve Customer

3

101887693v2

Confidences and/or Confidential Information shall remain in full force and effect pursuant to the applicable terms contained therein.

11. Duty to Preserve Customer Confidences and Confidential Information. You agree not to use or disclose, without the prior written consent of the Company, both during and after your Employment with the Company, Customer Confidences and Confidential Information, except as may be necessary in the good faith performance of your duties to the Company or as permitted by paragraphs 23 and 24 hereof.

12. Company Documents. You acknowledge that all documents, in hard copy or electronic form, received, created or used by you in connection with your Employment with the Company, other than those relating solely to your personal compensation and benefits, are and will remain the property of the Company. You agree to return and/or cooperate in permanently deleting all such documents (including all copies) promptly upon the termination of your Employment and agree that, during or after your Employment, you will not, under any circumstances, without the written consent of the Company, disclose those documents to anyone outside the Company or use those documents for any purpose other than the advancement of the Company's interests, or as permitted by paragraphs 23 and 24 hereof. You further understand and agree that you are prohibited from searching for, accessing, viewing, printing, transferring and/or using documents, e-mails, and any other data stored on any of the Company's computer systems in the absence of a legitimate business need or Company objective, and any such actions or use will be considered unauthorized.

13. Obligation to Return Signed Termination Certificate Upon Termination. Upon termination of your Employment, you will be asked to participate in an exit interview and to sign and deliver a "Termination Certificate," the form of which is attached hereto as Annex B. If you do not attend an exit interview, you are still obligated to sign and deliver the Termination Certificate. Your failure to sign the Termination Certificate, however, shall not affect any of your obligations under this Agreement.

14. Intellectual Property. (a) You agree to fully and promptly disclose to the Company, without additional compensation, all ideas, original or creative works, inventions, discoveries, computer software or programs, trading strategies, statistical and economic models, improvements, designs, formulae, processes, production methods and technological innovations, whether or not patentable or copyrightable, which, during your Employment with the Company, are made, conceived or created by you, alone or with others, during or after usual working hours, either on or off the job, and which are related to the business of the Company or which relate in any way to the work performed by you for the Company ("Intellectual Property"). You acknowledge that the Company owns all such Intellectual Property rights as works made for hire to the fullest extent of the law. For the avoidance of doubt, you hereby assign to the Company all such Intellectual Property rights in any and all media now known or hereafter developed, along with all existing causes of action, known or unknown.

(b) You agree, at any time during or after your Employment, to sign all papers and do such other acts and things, at the Company's expense, as the Company deems necessary or desirable and may reasonably require of you to protect the Company's rights to such Intellectual Property, including applying for, obtaining and enforcing patents or copyrights with respect to such Intellectual Property in any and all domestic and overseas jurisdictions.

4

101887693v2

**Restrictive Covenants**

15.    Nature of Company's Business.  You acknowledge that the Company is engaged in a highly competitive business and that the preservation of its Customer Confidences and Confidential Information is critical to the Company's continued business success.  You also acknowledge that the Company's relationships with its Customers are extremely valuable and that, by virtue of your Employment with the Company, you have had or may have contact with those Customers and are being compensated to develop relationships with Customers on behalf of and for the benefit of the Company.  As a result, your engaging in or working for or with any business which is directly or indirectly competitive with the Company would cause the Company great and irreparable harm if not done in strict compliance with this Agreement.

16.    Covenant Not to Compete.  You acknowledge that the Company is in a highly competitive industry and that your leaving the Company to join a competing business would jeopardize the Company's Customer Confidences, Confidential Information, Intellectual Property and Customer relationships.  Accordingly, you agree that:

(a)    Subject to the provisions below, during your Employment with the Company, and for the applicable Non-Compete Period (as defined below), and in consideration for the payments provided for below (excluding, for the avoidance of doubt, any payment in the event your Employment is terminated for Cause (as defined below)), you will not directly or indirectly work for or with, own, invest in, render any service or advice to or otherwise assist (in each case, whether or not for compensation) or act as an officer, director, employee, partner or independent contractor for any Competitor in the United States or any foreign country.  You acknowledge that, given the nature of the Company's business and the geographical market of the Company combined with your role and responsibilities, the geographical area of the United States or any foreign country and the Non-Compete Period are both reasonable.

(b)    To the extent that, at the time of the termination of your Employment, you intend to work for or provide services to a Competitor or any arguably competing business, you agree to provide the Company at the time of such termination with at least two weeks' advance written notice of your intention to do so.  You also agree that, should you consider working for any Competitor or arguably competing business at any time during the applicable Non-Compete Period, you will provide the Company with at least two weeks' advance written notice of your intention to do so.  The notices contemplated by this paragraph shall be delivered by you in writing to the attention of the General Counsel of the Company.

(c)    If your Employment with the Company is terminated due to your voluntary resignation, the Company agrees that the covenant not to compete set forth in paragraph 15(a) shall apply only during the period of the applicable Non-Compete Period that the Company, in its sole discretion, elects to pay you (in accordance with the Company's normal payroll practices) an amount equal to your regular base salary in effect on the effective date of your termination from the Company (the "Non-Compete Payments").  In the event the Company elects to make the Non-Compete Payments, you will be required to execute and not revoke a general release of claims in a standard form utilized by the Company as a condition to your receipt of the Non-Compete Payments.  The release must become effective within thirty (30) days following the date the Company notifies you of its intent to enforce the provisions of paragraph 15(a).  The Company will determine the timing and duration of the Non-

5

Compete Payments, although in no event will the duration of such payments extend beyond the end of the applicable Non-Compete Period. The Company shall have the right at any time during the Non-Compete Period to invoke its right to make the Non-Compete Payments. For example, if at the time of your termination of Employment, you notify the Company of your intent to go to a non-competing entity, the Company may elect not to make Non-Compete Payments. If, however, you decide later in the Non-Compete Period to go to a Competitor, you must notify the Company in accordance with paragraph 16(b) above, and the Company shall then have the right to elect to make the Non-Compete Payments for a period lasting no longer than the remainder of the Non-Compete Period. In any instance where the Company has the right to elect to make the Non-Compete Payments, it must do so within ten (10) business days of the Company's receipt of your written notice of your intent to resign or your intent to go to a competing entity, as the case may be. If during the period the Company is making the Non-Compete Payments, you perform services for and receive compensation from a non-competing entity, you shall notify the Company of such compensation, and the Company may in its discretion determine whether to offset such amounts against the Non-Compete Payments.

(d)     If your Employment is terminated by the Company for "Cause" (as that term is defined in your Offer Letter), the terms of paragraph 15(a) will apply for the duration of the applicable Non-Compete Period and you shall not be entitled to any Non-Compete Payments.

(e)     For purposes of this Agreement, the Non-Compete Period means: (i) if your employment is terminated by the Company without Cause or you resign for Good Reason, the period of time during which you are entitled to receive severance payments from the Company as set forth in your Offer Letter; (ii) if your employment is terminated by the Company for Cause, six (6) months from the effective date of your termination; and (iii) if your employment is terminated due to your voluntary resignation, the period time during which you receive Non-Compete Payments but in no event longer than six (6) months.

17.     <u>Non-Solicitation of Customers</u>. You acknowledge that, by virtue of your Employment by the Company, you have gained or will gain knowledge of the identity, characteristics and preferences of the Company's Customers, among other Customer Confidences and Confidential Information, and that you would inevitably have to draw on such information if you were to solicit or service the Company's Customers on behalf of a Competitor. Accordingly, you agree that during your Employment by the Company (including during any applicable Notice Period), and for twelve (12) months following the termination of that Employment for any reason, (the "Restricted Period"), you will not, on your own behalf or behalf of anyone else, directly or indirectly, solicit the business of, or direct tailored advertisements to, actual or prospective Customers of the Company (a) as to which you performed services or had direct contact, or (b) as to which you had access to Customer Confidences or Confidential Information during the course of your Employment by the Company. You further agree that during the Restricted Period, you will not provide services that are the same as or similar to those provided by the Company or encourage or assist any person or entity in competition with the Company to solicit, service, or direct tailored advertisements to any actual or prospective Customer of the Company covered by the previous sentence of this section, or otherwise seek to encourage or induce any such Customer to cease doing business with, or reduce the extent of its business dealings with, the Company. The prohibitions contained in this section shall not, however, apply to any Customers you developed without any substantial assistance from the Company, provided you so demonstrate in writing during your Employment with the Company.

6

18.     Non-Solicitation of Employees.  You also agree that, during the Restricted Period, you will not, directly or indirectly, solicit, hire or seek to hire (whether on your own behalf or on behalf of some other person or entity) any person who is at that time (or was during the prior six (6) months) an employee, consultant, independent contractor, representative or other agent of the Company.  Nor will you during the Restricted Period, directly or indirectly, on your own behalf or on behalf of any other person, entity or organization, induce or encourage any employee, consultant, independent contractor, representative or other agent of the Company to terminate or reduce his or her employment or other business relationship or affiliation with the Company.  Nor will you directly or indirectly assist any third party in doing what you yourself are prohibited from doing under this paragraph.

19.     Non-Disparagement.  Except as otherwise permitted by this Agreement or applicable law, you agree that during your Employment with the Company and at all times thereafter you will not make disparaging or defamatory comments regarding the Company or its owners, members, directors, officers, employees, shareholders, agents, representatives or others with whom the Company has a business relationship as of the date of termination of your Employment or make any public statements that are intended to, or can reasonably expected to, damage the reputations of any of such entities or persons.

20.     Tolling.  In the event that you violate any of the preceding provisions of the Restrictive Covenants sections of this Agreement, the time periods set forth in those sections shall be extended for the period of time you remain in violation of the provisions.

**Arbitration**

21.     (a)     It is understood and agreed between the parties hereto that any and all claims, grievances, demands, controversies, causes of action or disputes of any nature whatsoever (including, but not limited to, tort and contract claims, and claims based upon any law, statute, order, or regulation) arising out of, in connection with, or in relation to (i) the interpretation, performance or breach of this Agreement, (ii) Employee's employment by the Company, (iii) the termination of Employee's employment with the Company, and (iv) the arbitrability of any claims under or relating to this Agreement, shall be resolved by final and binding arbitration.  This agreement to arbitrate expressly includes, but is not limited to, claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Americans with Disabilities Act of 1990, as amended, Section 1981 of the Civil Rights Act of 1866, the Family and Medical Leave Act, as amended, the Employee Retirement Income Security Act, as amended, the Fair Labor Standards Act, as amended, and any similar federal, state, local or municipal law, statute or regulation.

(b)     The forum for any arbitration under this Agreement shall be final and binding arbitration before under the auspices of JAMS in New York, NY.

(c)     The arbitration shall be conducted in accordance with the then-existing JAMS Employment Rules and Procedures, except to the extent such rules conflict with the procedures set forth in this paragraph, in which case these procedures shall govern.  Any such arbitration shall be before one arbitrator.  The parties shall select a mutually acceptable retired judge from the panel of arbitrators serving with any of JAMS's offices, but in the event the parties cannot agree on an arbitrator, the Administrator of JAMS shall appoint a retired judge from such panels (the arbitrator so selected or appointed, the "Arbitrator").  The Arbitrator shall render an award and a written, reasoned opinion in support thereof.  The Arbitrator shall have power and authority to award any appropriate remedy (in law

7

101887693v2

or equity) or judgment that could be awarded by a court of law in the State of Illinois, and, upon good cause shown, the Arbitrator shall afford the parties adequate discovery, including deposition discovery.

(d)     The dispute resolution process shall be strictly confidential.  Neither party shall disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties, except as required by applicable law.  Except as provided herein, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement.  The Arbitrator and/or arbitration panel shall be bound by and shall strictly enforce the terms of this paragraph 21 and may not limit, expand or otherwise modify its terms.  The Arbitrator and/or arbitration panel shall make a good faith effort to apply the substantive law (and the law of remedies, if applicable) of the State of Illinois, or federal law, or both, as applicable, without reference to conflicts of laws provisions.  The Arbitrator and/or arbitration panel shall be bound to honor claims of privilege or work-product doctrine recognized at law, but the Arbitrator and/or arbitration panel shall have the discretion to determine whether any such claim of privilege or work-product doctrine applies.  The award rendered shall be final and binding upon the parties, and judgment upon the award may be entered in any court having jurisdiction thereof.

(e)     Claims must be brought by either you or the Company in your or its individual capacity, not as plaintiffs or class members in any purported class or collective proceeding, and the arbitrator shall not have the power to hear the arbitration as a class or collective action.  To the maximum extent permitted by law, both you and the Company waive the right to bring, maintain, participate in, or receive money from any class, collective or representative proceeding.  The parties intend this arbitration provision to be valid, enforceable, irrevocable and construed as broadly as possible.

(f)     Each party shall bear its own fees and expenses with respect to this dispute resolution process and any litigation related thereto and the parties shall share equally all fees and expenses, in accordance with the JAMS Employment Rules and Procedures, unless prohibited by applicable law.

**<u>Other Terms</u>**

22.     In the twelve (12) months following the termination of your Employment with the Company, in the event you seek or obtain employment or another business affiliation with any person or entity other than the Company, you agree to provide that person or entity with a copy of this Agreement. You also agree that the Company may provide a copy of this Agreement to any such person or entity.

23.     Nothing in this Agreement restricts or prohibits you from initiating communications directly with, responding to any inquiries from, providing testimony before, providing confidential information to, reporting possible violations of law or regulation to, or from filing a claim or assisting with an investigation directly with a self-regulatory authority or a government agency or entity, including without limitation, the U.S. Securities and Exchange Commission or the Financial Industry Regulatory Authority, (collectively, the "Regulators"), or from making other disclosures that are protected under the whistleblower provisions of federal, state, or local law or regulation.  You do not need the prior authorization of the Company to engage in conduct protected by this paragraph, and you do need to notify the Company that you have engaged in such conduct.  This Agreement does not limit your right to receive an award from any Regulator that provides awards for providing information relating to a potential violation of the law.

8

101887693v2

24.     Pursuant to the Defend Trade Secrets Act of 2016, non-compliance with the confidentiality provisions of this Agreement shall not subject you to criminal or civil liability under any Federal or State trade secret law for the disclosure of a Company trade secret: (i) in confidence to a Federal, State or local government official, either directly or indirectly, or to an attorney in confidence solely for the purpose of reporting or investigating a suspected violation of law; (ii) in a complaint or other document filed in a lawsuit or other proceeding, provided that any complaint or document containing the trade secret is filed under seal; or (iii) to an attorney representing you in a lawsuit for retaliation by the Company for reporting a suspected violation of law or to use the trade secret information in that court proceeding, provided that any document containing the trade secret is filed under seal and you do not disclose the trade secret, except pursuant to court order.

25.     You acknowledge that the restrictions contained in this Agreement are fair, reasonable and necessary for the protection of the legitimate business interests of the Company, and that, in the event of any actual or threatened breach by you, the Company may suffer serious, irreparable and substantial harm to its business and interests, the extent of which may be difficult to determine and impossible to fully remedy by an action at law for momentary damages.  You therefore acknowledge the Company may seek the entry of a restraining order, preliminary injunction or other preliminary, provisional or permanent court order to enforce this Agreement, and you further agree that the dispute resolution process set forth in paragraph 21 of this Agreement in no law limits the Company's right to obtain any preliminary, provision or permanent relief as may be necessary to protect the Company's rights and interests.  You also agree that any request for such relief by the Company shall be in addition and without prejudice to any claim for monetary damages which the Company might elect to assert.  In the event you violate any provision of this Agreement, the Company shall be entitled to recover all costs and expenses of enforcement, including reasonable attorneys' fees.

26.     You agree defend, indemnify and hold the Company harmless from and against any and all losses, claims, causes of action, liabilities, damages, costs and expenses (including attorney's fees) suffered or incurred by the Company as a result of any violation or threatened violation of any of your representations, warranties, covenants or undertakings set forth in this Agreement.  In the event of litigation arising from or related to the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other expenses.

27.     If any provision of this Agreement is held to be unenforceable by a court or other decision-maker, the remaining provisions shall be enforced to the maximum extent possible.  If a court or other decision-maker should determine that any portion of this Agreement is overbroad or unreasonable, such provision shall be given effect to the maximum extent possible by narrowing or enforcing in part that aspect of the provision found overbroad or unreasonable.

28.     This Agreement represents the entire agreement of the parties with respect to the subject matter covered, supersedes any and all prior written or oral agreements and cannot be modified except in a writing signed by both parties.  The waiver by any party to this Agreement of a breach of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent or simultaneous breach.

29.     This Agreement shall be binding upon and shall inure to the benefit of the Company and its successors and assigns.  Neither a formal assignment nor notice to you shall be required.  This

9

101887693v2

Agreement shall be binding upon you and your heirs, executors, administrators and legal representatives. However, your duties and obligations hereunder are personal and shall not be assignable or delegable by you in any manner whatsoever.

30. This Agreement shall be construed in accordance with the laws of the State of Illinois, without regard to the state's principles of conflict of laws.

31. Any notice required or permitted to be given under this Agreement shall be in writing and sent by both email and certified mail, return receipt requested. If the notice is from you to the Company, it shall be sent to the General Counsel of the Company. If sent by the Company to you, such notice shall be sent to your last known email and home addresses.

32. This Agreement may be executed by fax or email and/or in multiple counterparts, each of which shall be deemed an original.

33. The parties waive the right to a jury trial to the maximum extent permitted by law.

34. You acknowledge that you understand the terms and conditions set forth in this Agreement and have had adequate time to consider whether to agree to them and to consult a lawyer or other advisor of your choice if you wish to do so.

*(Signature page follows)*

101887693v2

IN WITNESS WHEREOF, the parties have executed this Agreement as of this 12th day of September 2018.

**THE COMPANY**

By: _Harry L. You_

Printed Name: _Harry L. You_

Title: _President & CFO_

**EMPLOYEE**

By: _[signature]_

Printed Name: _MICHAEL DUFFY_

[Signature page to Fair Competition Agreement]

101887693v2

**ANNEX A**

<u>Description of Restrictive Agreements</u>

<u>Description of Current Outside Business Activities or Board Service</u>

(Covered activities include: (1) Service on a board of directors similar body such as advisory committee, creditors committee, oversight or management body or investment board of any entity (including charitable, civic, religious, fraternal and other nonprofit organizations, etc.) whether or not compensation is received; (2) Outside securities sales activities, including involvement in private placements or offerings, are prohibited whether or not they involve compensation in any form; and (3) Outside business activities for which any compensation is received.) (Include the name of the outside entity/employer, type of business performed, type and method of compensation (if any), the estimated amount of time to be dedicated to the outside activity and any potential conflicts of interest that may arise). Note: Certain outside business activities and board service will require the approval of the Company's Board of Directors or other individuals or committees.

101887693v2

**ANNEX B**

**TERMINATION CERTIFICATE**

The undersigned hereby certifies as follows:

1.	When I signed the Fair Competition Agreement dated as of _____ (the "Agreement"), I read and understood the terms contained therein.  I have now reviewed the Agreement again as part of my exit interview, and I fully understand the terms thereof and my continuing obligations thereunder, including my obligations (a) not to use for personal benefit or disclose to others any Confidential Information (as defined in the Agreement), and (b) to assign to the Company all rights (if any) that I may have acquired in any Intellectual Property (as defined in the Agreement).

2.	I have fully complied with the terms of the Agreement, including the return of any documents and other tangible materials of any nature pertaining to my employment by GTY Technology Holdings Inc. (the "Company").

3.	I recognize that the unauthorized taking of any Confidential Information or Intellectual Property is a crime, and that any unauthorized taking of Confidential Information or Intellectual Property may also result in civil liability.

4.	The Company may notify my new employer of (a) the general nature or subject matter of the Confidential Information (without actually disclosing such Confidential Information) to which I had access while employed by the Company, and (b) my continuing obligations under the Agreement to keep such Confidential Information in confidence, and not to disclose or use such Confidential Information without the Company's prior written consent.

5.	Attached hereto is a complete list of all Intellectual Property which, under the terms of the Agreement, I have assigned to the Company.  If no such list is attached, I represent that during my employment I did not make, conceive, reduce to practice or develop, either alone or jointly with others, any Intellectual Property.

6.	I understand and acknowledge that should I fail to comply with my obligations under the Agreement, the Company shall have, in addition to a claim for damages, the right to obtain an injunction prohibiting me from disclosing Confidential Information to a third party or using any Intellectual Property.

Employee Signature: _____	Witnessed by: _____

Print Name: _____	Print Name: _____

Date:   _____	Date: _____

13

101887693v2