# EXHIBIT 3

EXECUTION VERSION

GTY Technology Holdings Inc.

February 14, 2019

Michael Duffy

Re:    Offer of Employment

Dear Michael:

On behalf of GTY Technology Holdings Inc. (together with its successors, the "Company"), I am pleased to offer you the position of Executive Vice President of the Company and Chief Executive Officer of CityBase, Inc. ("CityBase"), working out of CityBase's principal offices in Illinois. Your employment will be effective as of the Closing Date of the transactions contemplated by that certain Agreement and Plan of Merger (the "Merger Agreement") by and among the Company, CityBase and certain other parties thereto (the "Effective Date"). In the event the transactions contemplated by the Merger Agreement are not consummated, this offer letter will be void *ab initio* and of no force or effect. In addition, in the event of your "disability" (as defined in Treas. Reg. Section 1.409A-3(i)(4)), death or other termination of employment with CityBase prior to the Effective Date, this offer letter will be void *ab initio* and of no force or effect.

The terms that will apply to your employment with the Company are as follows:

1.  <u>Position and Duties</u>. Commencing on the Effective Date, provided you are able to provide services to CityBase as its Chief Executive Officer, you will be employed by the Company on a full-time basis as an Executive Vice President of the Company and the Chief Executive Officer of CityBase, reporting to the Chief Executive Officer of the Company (the "Company CEO").

    You agree to perform the duties and responsibilities of your positions, and such other duties and responsibilities as shall from time to time be mutually agreed upon between you and the Company CEO. The Company agrees that you will be delegated authority over the human resources function at CityBase as it relates to decisions involving the executive and management level employees at CityBase (*e.g.*, hiring and firing, discipline, compensation, allocation of bonuses, *etc.*), subject to oversight by the Company and its officers as they deem appropriate in the discharge of their duties and responsibilities to the Company in accordance with applicable laws and regulations. You agree that, while employed by the Company, you will devote your full business time and your best efforts, business judgment, skill and knowledge exclusively to the advancement of the business and interests of the Company and CityBase; <u>provided</u>, <u>however</u>, you will be permitted to (i) engage in charitable and civic activities and (ii) manage your personal and family financial matters, in each case, to the extent such activities do not individually or in the aggregate interfere with your duties and responsibilities to the Company or create any actual or potential conflict of interests with the Company's business.

101887690v4

2. <u>Base Salary and Annual Bonus</u>. During your employment with the Company, you will receive an initial base salary of $300,000, less applicable tax and other withholdings and deductions required by law, payable in accordance with the Company's payroll practices in effect from time to time. Your base salary will be subject to periodic review by the Compensation Committee (the "Committee") of the Company's Board of Directors (the "Board"). The Company may increase but not decrease your base salary without your prior written consent.

For each calendar year of your employment, you will be eligible to receive an annual cash incentive bonus (the "Annual Bonus") in a target amount equal to $100,000. The Annual Bonus will be subject to pro-ration for any period of employment of less than a full calendar year. The Annual Bonus will be subject to the achievement of Company and individual performance goals established by the Committee. The actual amount of the Annual Bonus, if any, will be determined in good faith by the Committee. You must be employed by the Company on the day that the Annual Bonus (if any) for a calendar year is paid in order to earn and receive such Annual Bonus. Any earned Annual Bonus shall be subject to standard payroll deductions and withholdings, and paid no later than March 15th of the year following the calendar year to which the Annual Bonus relates.

3. <u>Equity Compensation</u>. On or about the Effective Date, you will, subject to the approval by the Board, be granted an equity award in the form of performance-based restricted stock units covering 600,000 shares of Company common stock (the "Equity Award"). The Equity Award will be granted pursuant to the terms of, and subject to shareholder approval of, the GTY Technology Holdings Inc. 2019 Omnibus Incentive Plan (the "Incentive Plan"). The Board intends to adopt the Incentive Plan prior to the Effective Date and to submit the Incentive Plan for shareholder approval in connection with the consummation of the transactions contemplated by the Merger Agreement. The parties hereto agree to use commercially reasonable efforts to negotiate the terms of the Equity Award in good faith and agree to such terms prior to the date of grant. The Equity Award will be subject to all of the terms, conditions and restrictions set forth in the award agreement and the Incentive Plan.

4. <u>Benefit Plans and Programs</u>. You will be eligible to participate in the Company's or CityBase's benefits and benefits plans and programs in effect from time to time, subject to the terms of any and all plan documents. The Company reserves the right, in its sole discretion, to amend, change or discontinue, in whole or in part, any and all of its benefits and/or benefit plans and programs, at any time for any reason. The Company will reimburse you for all reasonable business expenses you incur in the performance of your duties, subject to the terms of the Company's expense reimbursement policies in effect from time to time applicable to senior executives. You will be entitled to paid vacation in accordance with the Company's policies. The Company will provide you with substantially the same director & officer insurance coverage that the Company provides senior executives.

2

5. <u>At-Will Employment</u>.  Your employment with the Company shall, at all times, be on an "at-will" basis.  This means that your employment is not for a fixed term or definite period.  Rather, your employment can be terminated at any time, for any or no reason, with or without cause or notice, and you may resign at any time with or without reason, subject to any notice you are required to provide pursuant to the terms of the Fair Competition Agreement between you and the Company.  The at-will nature of the employment relationship cannot be changed except in a separate, individualized, written agreement signed by you and the Company.

6. <u>Termination</u>.  In the event your employment with the Company terminates for any reason, the Company will pay you (i) unpaid base salary and earned but unpaid Annual Bonus through the termination date, payable in accordance with the Company's payroll practices, (ii) unreimbursed business expenses, payable in accordance with and subject to the terms of the Company's expense reimbursement policies and (iii) any vested non-forfeitable amounts owing or accrued as of the termination date under the Company's benefit plans or programs in which you participated (collectively, the "Accrued Benefits").

Without otherwise limiting the "at-will" nature of your employment, in the event your employment is terminated at any time by the Company without "Cause" (as defined below) or you resign for "Good Reason" (as defined below), then the Company shall provide you the following payments and benefits (the "Severance Benefits"): (1) an amount (the "Cash Severance") equal to 1.5 times the sum of your then-current base salary plus your target Annual Bonus, payable in substantially equal installments over the 18-month period following the date of your termination (the "Severance Period"); and (2) provided you timely elect and remain eligible for coverage pursuant to Part 6 of Title I of ERISA, or similar state law (collectively, "COBRA"), payment or reimbursement to you of an amount equal to the full monthly premium for COBRA continuation coverage under the Company's medical plans as in effect on the date of your termination with respect to the level of coverage in effect for you and your eligible depends as of the date of your termination, on a monthly basis on the first business day of the calendar month next following the calendar month in which the applicable COBRA premiums were paid, with respect to the period from the date of your termination until the earlier of (x) 18 months following such date and (y) the date you become eligible for continued coverage under a subsequent employer's health plan.

Notwithstanding anything herein to the contrary, you will not be entitled to receive the Severance Benefits or any other payment or benefit triggered upon termination of employment (other than the Accrued Benefits) unless, within 30 days following the termination date, you, or in the event of your death or Disability, your legal representatives, have executed and not revoked a general release of claims in a standard form utilized by the Company (the "Release").  The Severance Benefits shall be paid or commence on the first payroll period following the date the Release becomes effective (the "Payment Date"), <u>provided</u> that if the period during which you may deliver the Release spans two calendar years, the Payment Date shall be no earlier than January 1 of the second calendar year.

3

101887690v4

For purposes of this offer letter, "Cause" shall mean: (i) a willful act of dishonesty by you in connection with the performance of your duties as an employee; (ii) your conviction of, indictment for, or plea of guilty or nolo contendere to, (x) a felony or (y) any other crime involving fraud, embezzlement or moral turpitude or a material violation of federal or state law that has had or is reasonably likely to have a detrimental effect on the Company's reputation or business; (iii) your gross misconduct in the performance of your duties as an employee; (iv) your intentional or grossly negligent unauthorized use or disclosure of any Confidential Information or Intellectual Property (each as defined in the Fair Competition Agreement); (v) your material breach of any obligations under any written agreement between you and the Company, including, without limitation, the Fair Competition Agreement, if such breach is not remedied by you within thirty (30) days after the Company provides you with notice thereof; (vi) your material breach of any material Company policy generally applicable to Company employees and communicated to you, including but not limited to those relating to insider trading or sexual harassment, if such breach is not remedied by you within thirty (30) days after the Company provides you with notice thereof; or (vii) your willful refusal to follow the lawful directives of the Board or the Company CEO, if such refusal is not remedied by you within thirty (30) days after the Company provides you with notice thereof.

For purposes of this offer letter, "Good Reason" shall mean your resignation after one of the following conditions initially has come into existence without your written consent: (i) a relocation of your principal work location to a facility or a location more than 30 miles from your principal work location on the Effective Date; (ii) a requirement that you report to any officer of the Company other than the Company CEO; or (iii) a material diminution in your base salary or target Annual Bonus opportunity. A resignation for Good Reason will not be deemed to have occurred unless you give the Company written notice of the condition within 90 days after the condition initially comes into existence, the Company fails to remedy the condition within 30 days after receiving your written notice and you actually resign your employment within 60 days following the expiration of the Company's cure period.

7. <u>Fair Competition Agreement</u>. As a material inducement for the Company to agree to enter into an employment relationship with you on the terms set forth herein, you agree to execute and comply with the Fair Competition Agreement attached hereto as Exhibit A.

8. <u>Company Policies and Procedures</u>. Your employment will be subject to the Company's standard policies and procedures (whether as currently existing or to be established in the future), as they may be amended, changed or discontinued at any time and such other rules and regulations as may be adopted or amended in the Company's sole discretion.

9. <u>Section 409A</u>. The Severance Benefits and other payments under this offer letter triggered on a termination of employment shall begin only after the date of your "separation from service" (determined as set forth below), which occurs on or after date of the termination of your employment, and shall be subject to the provisions of this Section 9. The intent of the parties is that payments and benefits under this offer letter comply with, or are exempt

4

from, Section 409A of the Internal Revenue Code of 1986, as amended (the "Code"), and the regulations and guidance promulgated thereunder (collectively, "Section 409A") and, accordingly, to the maximum extent permitted, this offer letter shall be interpreted to be in compliance therewith. For purposes of Section 409A, your right to receive any installment payments pursuant to this offer letter will be treated as a right to receive a series of separate payments. Neither the Company nor you shall have the right to accelerate or defer the delivery of any such payments except to the extent specifically permitted or required by Section 409A.

If, as of the date of your "separation from service" from the Company, you are not a "specified employee" (within the meaning of Section 409A), then each installment of the severance payments shall be made on the dates and terms set forth in this offer letter.

If, as of the date of your "separation from service" from the Company, you are a "specified employee" (within the meaning of Section 409A), then: (i) each installment of the Severance Benefits that, in accordance with the dates and terms set forth in this offer letter, will in all circumstances, regardless of when the "separation from service" occurs, be paid within the short-term deferral period (as defined in Section 409A) shall be treated as a "short-term deferral" within the meaning of Treasury Regulation Section 1.409A-l(b)(4) to the maximum extent permissible under Section 409A and shall be paid on the dates and terms set forth in this offer letter; and (ii) each installment of the Severance Benefits that is not described in clause (i) above and that would, absent this clause (ii), be paid within the six-month period following your "separation from service" from the Company shall not be paid until the date that is six months and one day after such "separation from service" (or, if earlier, your death), with any such installments that are required to be delayed being accumulated during the six-month period and paid in a lump sum on the date that is six months and one day following your "separation from service" and any subsequent installments, if any, being paid in accordance with the dates and terms set forth in this offer letter; provided, however, that the preceding provisions of this clause (ii) shall not apply to any installment of the Severance Benefits if and to the maximum extent that that such installment is deemed to be paid under a separation pay plan that does not provide for a deferral of compensation by reason of the application of Treasury Regulation 1.409A-l(b)(9)(iii) (relating to separation pay upon an involuntary separation from service). Any installments that qualify for the exception under Treasury Regulation Section 1.409A-l(b)(9)(iii) must be paid no later than the last day of your second taxable year following the taxable year in which the "separation from service" occurs.

The determination of whether and when your "separation from service" from the Company has occurred shall be made in a manner consistent with, and based on the presumptions set forth in, Treasury Regulation Section 1.409A-1(h). Solely for purposes of this paragraph, "Company" shall include all persons with whom the Company would be considered a single employer under Section 414(b) and 414(c) of the Code.

All reimbursements and in-kind benefits provided under this offer letter shall be made or provided in accordance with the requirements of Section 409A to the extent that such

5

reimbursements or in-kind benefits are subject to Section 409A, including, where applicable, the requirements that (1) any reimbursement is for expenses incurred during your lifetime (or during a shorter period of time specified in this offer letter), (2) the amount of expenses eligible for reimbursement during a calendar year may not affect the expenses eligible for reimbursement in any other calendar year, (3) the reimbursement of any eligible expense will be made on or before the last day of the calendar year following the year in which the expense is incurred, and (4) the right to reimbursement is not subject to set off or liquidation or exchange for any other benefit.

Notwithstanding any other provision of this offer letter, the Company makes no representation or warranty and shall have no liability to you or to any other person if any provisions of this offer letter are determined to constitute deferred compensation subject to Section 409A but do not satisfy an exemption from, or the conditions of, that section. If either you or the Company reasonably determines that any payment to you will violate Section 409A, you and the Company agree to use reasonable best efforts to restructure the payment in a manner that is either exempt from or compliant with Section 409A to the extent that the restructuring is consistent with the original economic intent of the parties. You and the Company agree to execute any and all amendments to this offer letter (or any other applicable agreement) that are consistent with the original economic intent of the parties and promote compliance with the distribution provisions of Section 409A in an effort to avoid or minimize, to the extent allowable by law, the tax (and any interest or penalties thereon) associated with Section 409A. If it is determined that a payment to you was (or may be) made in violation of Section 409A, the Company will cooperate, to the extent commercially reasonable, with any effort by you to mitigate the tax consequences of such violation, including cooperation with your participation in any IRS voluntary compliance program or other correction procedure under Section 409A that may be available to you; provided, that such correction is consistent with the commercial intent of the parties hereunder; provided, further, that in no event shall the Company be obligated to incur any material cost in connection with its obligations under this sentence.

10. Section 280G. Notwithstanding any other provision of this letter or any other plan, arrangement or agreement to the contrary, if any of the payments or benefits provided or to be provided by the Company, CityBase or any of their affiliates to you or for your benefit pursuant to the terms of this letter or otherwise ("Covered Payments") constitute "parachute payments" within the meaning of Section 280G of the Code, and would, but for this paragraph be subject to the excise tax imposed under Section 4999 of the Code (or any successor provision thereto) or any similar tax imposed by state or local law or any interest or penalties with respect to such taxes (collectively, the "Excise Tax"), then the Covered Payments shall be reduced (but not below zero) to the minimum extent necessary to ensure that no portion of the Covered Payments is subject to the Excise Tax. Any such reduction shall be made by the Company in its sole discretion consistent with the requirements of Section 409A. Any determination required under this paragraph, including whether any payments or benefits are parachute payments, shall be made by the Company in its sole discretion. You shall provide the Company with such information and documents as the Company may reasonably request in order to make a determination under this paragraph.

6

The Company's determinations shall be final and binding on the Company and you.

11. Notices.  All notices or other communications required or permitted to be given under this offer letter shall be in writing and shall be deemed to have been duly given when delivered personally or one business day after being sent by a nationally recognized overnight delivery service, charges prepaid. Notices also may be given electronically via PDF and by email and shall be effective on the date transmitted if confirmed within 48 hours thereafter by a signed original sent in the manner provided in the preceding sentence.  Notice to you shall be sent to your most recent residence and personal email address on file with the Company.  Notice to the Company shall be sent to its physical address set forth on the first page hereto and addressed to the Board or such other person as the Company may designate at the email address provided by the Company for the Board or such person.

12. Entire Agreement; Miscellaneous.  This offer letter, together with the Incentive Plan, any equity award agreements referenced herein and the Fair Competition Agreement, constitutes the entire agreement and understanding between the parties as to the subject matter herein and supersedes all prior or contemporaneous agreements whether written or oral.  This offer letter supersedes in its entirety that certain offer letter between you and the Company dated as of September 12, 2018.  The terms of this offer letter may only be modified in a specific writing signed by you and an authorized representative of the Company.  The invalidity or unenforceability of any provision or provisions of this offer letter will not affect the validity or enforceability of any other provision hereof, which will remain in full force and effect.  Any disputes arising out of or related to this offer letter or your employment with the Company will be subject to the dispute resolution provisions in the Fair Competition Agreement, and this offer letter shall be governed by and construed in accordance with the governing law provision set forth in the Fair Competition Agreement.  In the event of any conflict between any of the terms in this offer letter and the terms of any other agreement between you and the Company, the terms of this offer letter will control.  By entering into this offer letter and commencing employment with the Company, you represent that you are not bound by any employment contract, restrictive covenant or other restriction that prevents you from entering into employment with or carrying out your responsibilities for the Company, or which is in any way inconsistent with this offer letter.  This offer letter is binding on and may be enforced by the Company and its successors and assigns and is binding on and may be enforced by you and your heirs and legal representatives.  In addition, the Company may assign this offer letter or any and all rights, duties and obligations hereunder to any subsidiary of the Company, including, without limitation, CityBase; provided that the Company hereby unconditionally guarantees full payment of any payment obligations hereunder in the event of such assignment; provided further that any payment made by any such assignee shall offset any payment obligation of the Company.  This offer letter may be executed in any number of counterparts, all of which taken together shall constitute one instrument. Execution and delivery of this offer letter by facsimile or other electronic signature is legal, valid and binding for all purposes.

[Remainder of page intentionally left blank]

7

101887690v4

This offer of employment is contingent upon (x) your consent to a background check, including a pre-employment drug screen, with results satisfactory to the Company, and (y) your presentation of satisfactory documentation that establishes identity and employment eligibility in accordance with the US Immigration and Naturalization requirements.

We are very excited about having you join the Company and I anticipate that you will make many important contributions to the Company and its strategic mission. Please acknowledge your acceptance of this offer by returning a signed copy of this offer letter.

Very truly yours,
GTY Technology Holdings Inc.

By: _____

Accepted and agreed:

_____
Michael Duffy

[Signature page to Employment Letter Agreement]

101887690v4